AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT

### for the

Eastern District of California

**FILED**

DEC 2 2 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| MICHAEL ANAYA-OTERO, | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

2:17-MJ-0217 DB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____November 19, 2017_____ in the county of _____Sacramento_____ in the

_____Eastern_____ District of _____California_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2251(a); And 18 U.S.C. § 2423(b). | Production, transportation, distribution, and/or possession of visual depictions of minors engaged in sexually explicit conduct and travelled with intent to engage in illicit sexual conduct with a minor |

This criminal complaint is based on these facts:

(see affidavit attached)

**SEALED**

☒ Continued on the attached sheet.

_____
*Complainant's signature*

SA Nicole Solander
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____12/22/2017_____

_____
*Judge's signature*

City and state:   Sacramento, California

Deborah Barnes, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, Nicole Solander, being duly sworn on oath, depose and say:

1.      I am a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI).  I am presently assigned to the Office of the Assistant Special Agent in Charge (ASAC), Sacramento, California.  In 2002 and 2009, I received training as a Special Agent at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, where I received instruction on federal criminal laws regarding financial crimes, alien smuggling and trafficking, customs violations to include child exploitation and other crimes in violation of the Immigration and Nationality Act (INA), Title 8 of the United States Code (U.S.C.), and Title 18 of the U.S.C.  I have been employed as a Special Agent with DHS for over fifteen (15) years.

2.      My duties as a Special Agent include the development and evaluation of information in order to detect violations of federal law; more specifically, criminal violations relating to child exploitation, including violations pertaining to the illegal production, distribution, receipt and possession of visual depictions of minors engaged in sexually explicit conduct and child pornography (as those terms are defined in 18 U.S.C. § 2256 and hereinafter referred to collectively as "child pornography") in violation of 18 U.S.C. §§ 2251(a), 2252(a) and 2252A.  I have received training in child pornography and child exploitation investigations.   I have observed and reviewed numerous examples of child pornography in all forms of media, including computer media. I have participated in over 60 child exploitation search warrants (both federal and with the Sacramento Valley Internet Crimes Against Children (ICAC) Task Force) involving the use of computers and Internet, and have assisted in the gathering of evidence during execution of those warrants.  I am familiar with the information contained in this affidavit based upon the investigation I have conducted and based on my conversations with other law enforcement officers and information received from other law enforcement agencies.

### Introduction

3.      I submit this application and affidavit in support of an arrest warrant authorizing the arrest of MICHAEL ANAYA-OTERO (hereinafter SUBJECT).  As set forth herein, there is probable

1

1    cause to believe that this SUBJECT has produced child pornography, in violation of 18 U.S.C § 2251(a)

2    and travelled with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b).

3        4.        The statements in this affidavit are based upon my experience and training, information

4    provided by other law enforcement agents, as well as my own investigation of this matter.  Since this

5    affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included

6    each and every fact known to me concerning this investigation.  I have set forth only the facts that I

7    believe are necessary to establish probable cause to believe that the SUBJECT has violated 18 U.S.C. §§

8    2251(a) and 2423(b).

9                                **Statutory Authority**

10       5.        This investigation concerns alleged violations of 18 U.S.C. §§ 2251(a) and 2423(b)

11   relating to material involving the sexual exploitation of minors.

12           a.   Title 18, United States Code, Section 2251(a), which in part makes it a crime for any

13                person who employs, uses, persuades, induces, entices or coerces any minor to engage in,

14                or who transports any minor in or affecting interstate or foreign commerce, or in any

15                Territory or Possession of the United States, with the intent that such minor engage in, any

16                sexually explicit conduct for the purpose of producing any visual depiction of such conduct

17                or the purpose of transmitting a live visual depiction of such conduct shall be punished as

18                provided under subsection (e) of this section, if such person knows or has reason to know

19                that such visual depiction will be transported or transmitted using any means or facility of

20                interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed,

21                if that visual depiction was produced or transmitted using materials that have been mailed,

22                shipping or transported in or affecting interstate or foreign commerce by any means or

23                facility of interstate or foreign commerce or in or affecting interstate or foreign commerce

24                or mailed.

25           b.   Title 18, United States Code, Section 2423(b), which in part makes it a crime for any

26                person who travels in interstate commerce or travels into the United States, or a United

27                States citizen or an alien admitted for permanent residence in the United States who travels

28                in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another

                                            2

person.

## Definitions

6.    For purposes of this warrant, relevant specialized and technical terms are defined as follows:

    a.   The term "minor," "sexually explicit conduct," "visual depiction," "producing," "child pornography," and "child erotica" as used herein, are defined as set forth below:

        i.   Minor is defined as any person under the age of eighteen years. 18 U.S.C. § 2256(1).

        ii.   Sexually explicit conduct means actual or simulated - (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256(2).

        iii.   Visual depiction includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image. 18 U.S.C. § 2256(5).

        iv.   Producing means producing, directing, manufacturing, issuing, publishing, or advertising. 18 U.S.C. § 2256(3).

        v.   Child pornography means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct, where   – (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct[.] 18 U.S.C. § 2256(8).

        vi.   Child erotica are images depicting minors in the nude or scantily clad in age-inappropriate clothing, striking sexually provocative poses intended to illicit a

sexual response.  The images may not meet the definition of sexually explicit conduct, but are often found in child pornography collections.

b.  The term "computer" is defined under 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to operating in conjunction with such device."

c.  Computer hardware consists of all equipment that can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data.  Hardware includes, but is not limited to, any data processing devices (such as central processing units, self-contained laptop and notebook computers, hand-held electronic organizers, personal digital assistants, and WebTV units), removable media, internal and external storage devices (magnetic storage devices such as hard disk drives, diskette drives, and tape drives, optical storage devices such as CD-ROM drives, CD-R/CD-RW recorders, and DVD drives/recorders, and other memory storage devices), and related communication devices such as modems, cables, connectors, programmable telephone dialing or signaling devices, and electronic tone-generating devices, and any devices, mechanisms, or parts that can be used to restrict access to computer hardware such as physical keys and locations.

d.  A system peripheral is a piece of equipment that sends data to, or receives data from, a computer.  Keyboards, mouses, cameras, webcams, video cameras, printers, scanners, plotters, video display monitors, and certain types of facsimile machines are examples of peripherals.

e.  Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work.  Software is stored in electronic, magnetic, optical, or other digital form.  It commonly includes programs to run operating systems, applications (like word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

f. Computer-related documentation consists of written recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

g. Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password or pass-phrase (string of alphanumeric characters) usually operates as a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, cards, and circuit boards. Data security software or digital code may include a programming code that creates "test" keys or "hot" keys, which perform certain preset security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

h. Storage media includes any material capable of storing information in a manner that can be used by computer hardware to save and/or retrieve information. Examples of storage media include diskettes, CD-ROMs, DVDs, magnetic tapes, ZIP disks, JAZ disks, thumb drives, and EPROMS.

i. The Internet is defined as a non-commercial, worldwide network of computers. It is a self-governing network devoted mostly to communication and research and has millions of users worldwide. The Internet is not an online service but a collection of tens of thousands of computer networks, online services, and single user components.

j. Internet Protocol (IP) is the primary protocol upon which the Internet is based. It allows information to travel through multiple networks on the way to its final destination.

k. An IP address is a unique number assigned to every computer directly connected to the Internet (for example 190.25.240.1). The IP address consists of four parts, is unique to each machine, and can be used to identify a particular machine on the network, at a particular time and date.

5

l.  An Internet Service Provider (ISP) is a business that allows a user to connect to the Internet through its computers for a fee.  Internet Service Providers usually provide an Internet connection, an electronic mail (e-mail) address, and sometimes Internet browsing software.  A user also may connect to the Internet through a commercial online service such as CompuServe or America Online (AOL).  With this service, users may also have access to other features such as chat rooms and searchable databases.

m.  "Domain Name" refers to the common, easy to remember names associated with an Internet Protocol address.  For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol address of 149.101.1.32.  Domain names are typically strings of alphanumeric characters, with each level delimited by a period.  Each level, read backwards – from right to left – further identifies parts of an organization.  Examples of first level, or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and, .edu for educational organizations.  Second level names will further identify the organization, for example usdoj.gov further identifies the United States governmental agency to be the Department of Justice.  Additional levels may exist as needed until each machine is uniquely identifiable.  For example, www.usdoj.gov identifies the world wide web server located at the United States Department of Justice, which is part of the United States government.

n.  "Log Files" are records automatically produced by computer programs to document electronic events that occur on computers.  Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors.  Logs are often named based on the types of information they contain.  For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

o.  "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

p. "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

q. A "JPEG" is a graphic image file. Other known graphic image files include, but are not limited to, "GIF," "TIFF," "RAW," and "BMP."

r. An "MPEG" is a video image file. MPEG files are generally larger than JPEG files and require the user to have a computer with sufficient processor speed, internal memory, and empty hard disk space. MPEG viewer software is also needed to play the files.

s. The Uniform Resource Locator (URL) is the address of a resource or file located on the Internet, also called a "domain name."

t. A webcam is a video capture device connected to a computer or computer network. The video captured by the device is broadcast over the internet to be viewed by other internet users in real time. The term "Webcam" can also be used to describe a file transfer between two individuals on the internet. An individual playing a video file saved to their own computer can broadcast the video to another user's computer screen through an internet connection.

u. Screen capture software is a software application that copies what is currently displayed on a user's computer screen to an electronic file or printer. The electronic file can then be viewed as a video. This video depicts everything that was displayed on the original user's computer screen. This software can record real time chat sessions, key strokes, mouse movement, video and audio displayed on the user's screen.

v. In addition, as used in this affidavit, "records," "documents," and "materials" include items in whatever form and by whatever means they may have been created and/or stored. This includes any handmade, photographic, electrical, electronic, and magnetic forms. It also includes items in the form of computer hardware, software, documentation, passwords, and data security devices.

## CHARACTERISTICS COMMON TO PERSONS WHO PRODUCE AND POSSESS CHILD PORNOGRAPHY

7.  Based upon my training and experience, I am aware that the following characteristics are generally found in varying combinations in people who receive, possess, distribute, produce, or transport child pornography:

a.  Persons who download and possess child pornography view children as sexual objects.

b.  Persons who download and possess child pornography collect sexually explicit and other erotic images of minors which they use for their own sexual gratification and fantasy.

c.  Persons who download and possess child pornography rarely, if ever, dispose of sexually explicit images of minors because the images are treated as prized possessions. They store such images in different formats including photos, printouts, magazines, videotapes, and forms of digital media such as hard drives, diskettes, and CD-ROMs. They store such images in different places including their home, their car, and other areas under their control.

d.  Persons who download and possess child pornography may use sexually explicit images of minors as a means of reliving fantasies or actual sexual encounters. They also use the images as keepsakes and as a means of gaining acceptance, status, trust, and psychological support by exchanging, trading, or selling the images to other people with similar interests.

e.  Persons who download and possess child pornography go to great lengths to conceal and protect from discovery their collection of sexually explicit images of minors. They may have passwords, to access programs or to control encryption, which are written down and located in the vicinity of their computer, or located on their person. They may place child pornographic files in directories or folders on their computer or other digital storage media, not typically reserved for image or video files. They may use encryption software to protect their child pornographic files. They may change file names of sexually explicit images in an attempt to hide such images from a forensic review. They may change the

extension on such image files in an effort to disguise them as a word processing file. They may also transfer such files downloaded from the internet to removal storage media including but not limited to computer disks, thumb-drives, digital cameras, smart cards, and cellular phones, and then attempt to erase the files from computer hard drives, in an effort to hide evidence of their download activity.

f.  If one of these collectors is someone who has had sexual contact with a minor, it is likely such person has visual depictions of minors with whom they have had sexual contact. If a picture of a minor is taken by such a person depicting the minor in the nude, there is a high probability the minor was used to produce sexually explicit images to be traded with people with similar interests. If pornographic depictions of a minor were produced as mentioned above, an analysis of the cameras, scanners, or webcams in the possession of the subject may yield clues as to what device was used in the commission of such crime. Such analysis would require the removal of the device to a laboratory setting.

g.  If child pornography is found on the hard drive of a collector's computer, and the collector's computer was connected to the Internet, there is a strong likelihood that the person received the images of child pornography from the Internet, either from internet websites devoted to child pornography, or from other individuals who sent the images directly via email.

h.  I also know from my own training and experience and the training and experience of other agents with whom I work, that child pornography collectors who acquire sexually explicit images of minors from the Internet, will typically bookmark the locations (i.e. websites, news groups and other locations) on the Internet from which they accessed child pornographic images.   By bookmarking such locations, these collectors can readily gain access to such sites.

i.  I know from my own training and experience and the training and experience of other agents with whom I work with, that child pornography collectors also tend to collect child erotica because it is more readily available, partially satisfies their sexual fantasies, and is often intermixed with child pornography on the Internet.

j.   I also know from my training and experience, and the experience of other agents with whom I work with, that child pornography collectors often will collect graphic sexual stories relating to the sexual abuse of children, as they too are used to satisfy their sexual fantasies.

### FACTS ESTABLISHING PROBABLE CAUSE

8.   On November 19, 2017, the SUBJECT attempted to enter Canada via vehicle at the Lansdowne Port of Entry (POE).  Canadian Border Security Agency (CBSA) officials denied the SUBJECT entry after he stated that he was entering Canada to meet a 15-year old female he had met on social media.  CBSA officials stated that they believed his intent was to engage in sexual activity with the 15 year old female, and the lawful age of consent in Canada is 16.

9.   The SUBJECT attempted to re-enter the United States through the Alexandria Bay, NY POE which is adjacent to the Canadian Lansdowne POE.  CBSA had notified Customs and Border Protection (CBP) of their refusal of entry to the SUBJECT and the grounds for their refusal.

10.   CBP encountered the SUBJECT upon his attempt to re-enter the United States.  The SUBJECT was found to have a smartphone- an Alcatel Idol 4, on his person.  During an initial interview, the SUBJECT admitted that he was in possession of images and videos of what he believed to be underage females on that phone.  Pursuant to a border search, CBP conducted a search of the phone and discovered numerous images and videos of young females engaging in sexually explicit activity.

11.   HSI SA Sean Mullin responded to the Alexandria Bay, NY POE to conduct an interview of the SUBJECT.  SA Mullin read the SUBJECT his constitutional rights at which time he stated he understood them and he was willing to answer questions.  The interview was video recorded.  The SUBJECT stated that he was going to Canada to meet with a female he believed to be fifteen (15) years of age that he had been conversing with on social media.  The SUBJECT denied that he was meeting the female to engage in sex, but then stated that if their relationship progressed that he would consider it. The SUBJECT state that the name of the female, along with her contact information and text messages were on his smartphone.  (During a border search of his vehicle; condoms, a bra, and four additional phones were found.)

10

12.    The SUBJECT was asked about the sexually explicit videos and images on his phone. He admitted that the videos on his phone were of females that he believed to be under the age of 16 and that he was sexually aroused by them. He stated that the sexually explicit videos and images were sometimes sent to him at his request, at which time he sent them images of his erect penis, and other times the images were sent to him unsolicited. The SUBJECT admitted that he had been communicating with females on social media for at least two years and had been receiving images for approximately the same amount of time. He stated that he frequently used his phone to access social media sites, to communicate with females on those sites and to send and receive sexually explicit videos and images of young females.

13.    With the assistance of the SUBJECT, SA Mullin viewed sexually explicit images and videos contained on the SUBJECT's phone. SA Mullin personally viewed approximately fifteen (15) videos on the SUBJECT's phone of females masturbating. Most of the videos were close up of a vagina with fingers being inserted. The faces were not visible on the majority of the videos, but THE SUBJECT stated that the females in the videos ranged in age from fourteen to sixteen years old.

14.    THE SUBJECT identified one of the females in multiple videos as a female named B.N. (full name redacted). He stated that B.N. was between thirteen and fifteen years old. He stated that he flew to Northern California on one occasion within the past two years to meet B.N. The SUBJECT admitted to engaging in sexual intercourse with B.N. when he was nineteen years old and she was thirteen years old. He stated that he flew from Newark, NJ to Sacramento, CA and stayed at the Heritage Hotel in Rocklin, CA. B.N. was later identified as a fifteen year old female living in Northern California.

15.    The SUBJECT also identified one of the females in multiple videos as M. The video of M largely depicted a female inserting her fingers into her vagina. He admitted he was sexually aroused by the videos and images and that he masturbated while viewing them

16.    SA Mullin located a phone number for M on the SUBJECT's contact list. SA Mullin contacted M. M was identified as a fourteen year old female named M.B. (full name redacted) residing in Northern California. She admitted to texting the SUBJECT videos of herself masturbating via smart phone texting applications and social media apps.

11

17.     The SUBJECT stated that most communications he had with those he believed to be underage females were conducted through social media apps on his smartphone such as Snapchat and Instagram.

18.     On November 28, 2017, SA Mullin contacted your affiant in reference to the SUBJECT and the two victims who resided in Northern California.  SA Mullin provided your affiant with his reports per the investigation so far and offered further assistance. SA Mullin provided your affiant with images of the SUBJECT, and stated he was in the process of obtaining Federal Search warrants for the five phones taken pursuant to the border search conducted on November 19, 2017.

19.     On December 6, 2017, your affiant received records from the SureStay Plus Hotel located at 4480 Rocklin Rd, Rocklin, CA pursuant to a previously issued DHS Summons by SA Mullin.  The records indicated that Michael ANAYA stayed at the hotel on two occasions, from 4/15-4/18/16 and 1/13-1/17/17.  Those stays were booked through Expedia.

20.     On December 5 and 6, 2017, your affiant reviewed images and videos present on the SD Card found inside the Alcatel Idol 4 phone seized previously.  Many images and videos contained females appearing to be in their teenage years.  Your affiant was able to identify B.N. in many of the images and videos per her username.  There were images of her with the SUBJECT.  There were also images and videos of her that were sexually explicit alone and with a male believed to be the SUBJECT. A screenshot of a map/GPS program was found showing Roseville, CA and B.N.'s address.  A screenshot of a settings page was found which showed the name as Michael A, email address of dragonsofatlantis246@gmail.com, mobile number of 908-410-4336, home address of 4480 Rocklin Rd. and work address of 4460 Rocklin Rd.

21.     On December 7, 2017, your affiant was witness to the forensic interview of victim B.N. at the Placer Multi-Disciplinary Interview Center in Roseville, CA.   B.N. stated the SUBJECT is her ex that lives in Elizabeth, New Jersey.  She met up with him twice when he visited Northern California and they had sex during both visits.  The first time he visited, she was in 7th grade.  During the visit, he took pictures of her, between her legs.  She stated that the SUBJECT knew she was in middle school and when her birthday was.  She sent him pictures and that he would get mad at her if she didn't send him

12

1  pictures. She verified that both of their visits took place at the same hotel, which she stated was the

2  Heritage Hotel or across from the Heritage Hotel.

3      22.    B.N. was shown some images that were found on the SD Card found inside of the

4  SUBJECT's Alcatel Idol 4 phone. She identified photos of her and the SUBJECT during his visits to

5  Northern California when they had sexual relations.

6      23.    On December 7, 2017, your affiant was witness to the forensic interview of victim M.B. at

7  the El Dorado District Attorney's Office Interview Center in Placerville, CA. M.B. admitted to

8  communicating with the SUBJECT via apps such as Snapchat and Instagram. She knew he lived in New

9  Jersey and he knew she lived in California. He stated he was 21 and he knew she was 14 as he asked her

10  age. He would take screenshots of her and would send her videos through Snapchat of his genital area.

11  He asked her for images that he could masturbate to and when she said no, he begged and begged. She

12  did send him a picture of her breasts and possibly her face via Snapchat. She believed she sent 2-3

13  images when he asked for them. He asked her for pictures of her vagina many times but she did not send

14  them as far as she remembers. During video chat with the SUBJECT, he wanted to do "sex stuff" and

15  wanted to watch her touch herself and he would beg whenever she would turn him down. He told her he

16  wanted to come to California to meet her, but she said she never met him in person.

17      24.    On December 8, 2017, your affiant requested via DHS Summon to Expedia for the

18  customer information and travel/purchase history for the SUBJECT and email addresses

19  dragonsofatlantis246@gmail.com and michael.anaya246@gmail.com. According to Expedia, the

20  account was used to purchase three roundtrip flights from Newark, NJ to Sacramento, CA and two hotel

21  stays in Rocklin, CA.  The first trip was 4/15-4/18/16 on American Airlines with the hotel stay of 4/15-

22  4/18/16 at the SureStay Plus Hotel in Rocklin, CA. The second trip was 1/13-1/17/17 on American and

23  Delta Airlines with a hotel stay of 1/13-1/17/17 at the SureStay Plus Hotel in Rocklin, CA.  The third trip

24  was 11/3/17-11/8/17 on Delta and American Airlines. No hotel reservation was made for those

25  corresponding dates. The email address on the account was dragonsofatlantis246@gmail.com and the

26  traveler name of all the reservations was Michael ANAYA with phone number of 908-410-4336.

27

28  ///

13

**REQUEST FOR SEALING**

25.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation run by Homeland Security Investigations. In the past, unsealed search warrant applications in this district have been publicized by the media, resulting in the flight of suspects and the destruction of evidence. As such, premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

**CONCLUSION**

26.     Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that the SUBJECT is involved in the production, transportation, distribution, and/or possession of visual depictions of minors engaged in sexually explicit conduct and travelled with intent to engage in illicit sexual conduct with a minor. Your affiant respectfully submits that there is probable cause to believe the SUBJECT has violated 18 U.S.C. §§ 2251(a) and 2423(b).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

14

27.   I swear, under penalty of perjury, that the foregoing information is true and correct, to the best of my knowledge, information and belief.

Respectfully submitted,

Nicole Solander
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on:   $Dec, 22, 2017$

The Honorable Deborah Barnes
UNITED STATES MAGISTRATE JUDGE

for   (telephonic)

Approved as to form by AUSA Audrey B. Hemesath

15