HEATHER E. WILLIAMS, #122664
Federal Defender
RACHELLE BARBOUR, #185395
Assistant Federal Defender
Office of the Federal Defender
801 I Street, 3rd Floor
Sacramento, CA 95814
Tel: 916-498-5700/Fax 916-498-5710
rachelle.barbour@fd.org

Attorneys for Defendant
MICHAEL ANAYA-OTERO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL ANAYA-OTERO,<br><br>　　　　　Defendant. | Case No. 2:18-cr-015-JAM<br><br>MICHAEL ANAYA-OTERO'S<br>SENTENCING MEMORANDUM<br><br>Date: February 25, 2020<br>Time: 9:15 a.m.<br>Judge: Hon. John A. Mendez |

　　　　When Michael Anaya-Otero was 18 years old, he graduated from high school, obtained a full-time job, and was able to buy a smart phone for the first time. He still living with his mother and little brother in New Jersey, in the same extremely abusive household in which he had grown up, where his parolee father came in and out of the house, alternately beating his family and neglecting them. Michael supported his family financially and helped raise his little brother. Michael desperately wanted to move on with his life, fall in love, get married, and have children.

　　　　With his new smartphone, Michael found Instagram, Google Hangouts, Snapchat, and Kik. He discovered that he could meet and talk with young women online, and that they would talk to him. On social media, they couldn't know right away that he stood 5'1" and weighed 115. They didn't know that he suffered from learning disabilities and crippling depression. He had a cute face, and a sweet disposition, and he met young women who shared his interests in music and art.

It was in this context that he met BN online in early 2016, when he had just turned 19 years old. She lived in California and her online profile indicated that she was interested in some of the same things he liked, including drawing and music. They texted and talked, eventually opening up about their shared experiences with depression, trauma, and abuse at the hands of their parents. They fell in love and supported each other. Eventually BN invited Michael to visit her in Sacramento, and he did so in April of 2016, riding an airplane for the first time in his life. They met, and were intimate together, also a first for him. They continued to talk about real things: feelings, school, his work, their messed-up families. BN mailed a letter to Michael declaring her love – a huge move for a teen in 2016. She invited him back to Sacramento, and he came back in January 2017. They were intimate again. During this visit, BN took sexual selfies with Michael, and afterwards, she repeatedly texted those mementos to Michael to ensure that he wouldn't forget their time together. The image for which he is being prosecuted is a <u>screenshot</u> of a sext BN sent him in New Jersey.

There is no doubt that Michael committed a crime in his interactions with BN. BN was well underage, and Michael was a very young adult. He had no business falling in love with a teen. (His own parents had started dating at 14 and 19 years old, but that certainly hadn't turned out well for anyone.) He never should have come to meet her. But this was a real relationship, with love notes and long conversations. It gave Michael something he'd never had before – unconditional love and support. This relationship was not conducted in secret. Michael spoke with BN's mom about the relationship and had her number in his cell phone. BN sent messages to Michael's mom telling her how much she loved her son.

Shortly after the January 2017 visit, BN started to pull away. Michael discovered, after BN borrowed his cell phone during that visit, that BN was sexting with a much older man, a married father of small children. BN then acknowledged the other relationship. She and Michael tried to break up long distance, then got back together. Eventually they broke up for good, because BN had found a different new man, Gerardo, whom she loved instead of Michael. Gerardo, like Michael, was a young man, 18 or 19 years old. Gerardo traveled from Virginia to

visit BN in Sacramento in 2017, where they took photographs together.[1]  Over the summer of 2017, BN texted Michael for advice and support about her relationship with Gerardo.  Her friendship with Michael eventually petered out – the last time BN texted Michael, she told him that a kid brought a gun to school, and she was freaked out.  He tried to help her with this, then they never spoke or texted again.

For a short while in Summer 2017, Michael texted and talked with another California teen, MP.  Like BN, MP liked art and music.  Like Michael, she had suffered from poor parenting.  They talked and sexted for a while and then grew apart.  Michael never tried to visit or meet her.  A review of their chats indicates they had a short-term, mutual, long-distance relationship that involved sexting.

The question for the Court is whether the mandatory minimum sentence of 10 years is sufficient but not greater than necessary under 18 U.S.C. § 3553(a) to satisfy all the factors applicable to sentencing.  The United States Probation Office concurs that numerous factors in this case mean that a guideline sentence is too high.  Those factors include Michael's young age at the time of the crimes, the emotional relationship that he had with BN, the fact that Michael only sexted with MP and never tried to meet her, and Michael's positive social factors in the face of a truly horrific childhood.  Measuring these factors, the Probation Office recommends a sentence of 150 months, or 12.5 years.  Michael requests that the Court sentence him to 120 months, or 10 years, in this case.

Clearly Michael broke the law.  He is suffering hugely for it.  He will go to prison for at least 10 years.  He will be a registered sex offender for the rest of his life.  He likely will never have the stable job, wife, and kids that he wanted when he was 19 years old.  But the Sentencing Guidelines are colossally out of whack when the crime of sexting carries a much more serious penalty than having intercourse with an underage person.

This case comes before the Court in the most ironic of circumstances: had Michael simply come to Sacramento, but no photographs were ever taken, his guidelines would be 57 to

---

[1] Defense counsel does not know if Gerardo was ever prosecuted for this conduct.

71 months for sexual contact with BN.[2]  However, because BN took sexual photographs of their second time together, the production guideline range soars to 168 to 210 months.  This makes absolutely no sense – how does the fact that BN took private photos of their time together merit a guideline increase of over 100 months?

The issue of images becomes even starker when MP's count is added.  Michael never met MP, and every photograph she sent him was created by her in the context of consensual sexting.  However, just the guideline for MP – only for sexting – is 135 to 168 months.  (See PSR, pp. 8-9.)  Accordingly, Michael's travel to Sacramento to be intimate with BN subjects him to half the guideline sentence of simply sexting with MP from 3000 miles away.  And given the rule on multiple counts and multiple victims, MP's count adds over 40 months to the guideline determined for BN.

All of this is to say, the Guidelines are correctly calculated in this case, but they massively overstate the need for punishment.  Happily, the Probation Office recognizes this irrationality of the guidelines in this case, and recommends a sentence well below the unreasonably harsh guideline range.  The Government will respond by saying, "This is not just a sexting case."  And they are right.  And it is the rank irrationality of the guidelines that "just a sexting case" - as with MP - carries a far higher sentence than actual sex.

The Sentencing Commission was forced by Congress to set up this manifestly irrational scheme and has no ability to fix it.  See U.S.S.C., History of the Child Pornography Guidelines (Oct. 2009)(describing Congressionally-mandated changes to the guidelines).  Further, the production statute is written extremely broadly, causing production sentencing to apply even to

---

[2]  The Base Offense Level for a violation of section 2423(d) (traveling for illegal sexual contact with a minor) is 24.  (Compare this to the Base Offense Level of 32 for consensual sexting aka "production of child pornography.")  Regarding BN, the same two guideline adjustments apply to these differing Base Offense Levels - use of a computer, commission of sexual acts – leading to an 8 level swing between the two Total Offense Levels.  (It is not clear why the travel guideline does not include an increase for victims aged 13 to 15. Compare §2G1.3 (travel) with 2G2.1 (causing a minor to sext).)  Ironically, "causing" a minor to sext carries a guideline **8** offense levels higher than traveling between states and having sex with that same minor.  There is no system in which this makes any sense, but this is the system we have.

consensual sexting, like Michael's sexting with MP. 18 U.S.C. §2251(a).  This is because – in addition to words like "coerce" – the production statute uses words like "induce" and "use." Accordingly, any sexting with a minor falls within this, without any real distinction regarding the harm of the conduct itself.  Any sext that a minor sends would inevitably appear to "use" a minor to produce an image of sexual conduct.  The Sentencing Guideline then expands upon it in such a way as to amplify the conduct here, even when the teens took the photos themselves: Michael – by participating in consensual sexual conduct and sexting – "induced" the commission of a sexual act which then led to the creation of an illegal image.  Boom – the production guideline applies.

To its credit, the Government recognized that a production charge was questionable given the evidence that both BN and MP took the photographs themselves.  The Government accordingly agreed to substitute "enticing" charges, with a ten year mandatory minimum.  The Government insisted, though, that the parties use the production guidelines - on the theory that the use of a cell phone induced the creation of illegal images (even though they were produced by the teens themselves).  This is true both for BN and for MP.

At some point, the law needs to change to reflect modern reality - teens are sexting.  Often, like MP and Michael, they are sexting instead of having any in-person contact.  This means that one out of four teens has committed a federal offense, potentially subjecting them to at least a decade, and maybe 15 years, in prison.  The law must eventually catch up to this new reality, in which youth sexting is a "potentially normal, component of sexual behavior and development."  Madigan, et al. "Prevalence of Multiple Forms of Sexting Behavior Among Youth: A Systematic Review and Meta-analysis," Journal of the American Medical Association (April 2018).  One large factor in sexting?  Smart phone ownership.  Id.

Yet, the Sentencing Commission's 2009 in-depth analysis of the pornography guidelines, did not even contain the word "sexting" much less consider the application of the guidelines to this conduct.  U.S.S.C., History of the Child Pornography Guidelines (Oct. 2009).  By late 2012, the Sentencing Commission discussed sexting briefly on one page of the 468-page report.

U.S.S.C., Federal Child Pornography Offenses (Dec. 2012), p. 109.  Today, as noted by the Probation Office, "It is common and inescapable for teenagers and young adults to use the internet and social media to communicate with one another."  (Doc. 50, PSR, para. 93, p. 17.)  The law has not caught up to the changes in teenage sexual development wrought by technology.

Michael never distributed, posted, printed or shared these private photographs with anyone.  And, unlike defense counsel's last teen sexting case before Your Honor, absolutely no coercion, lies, or sextortion were ever used.  In fact, the texts exchanged show enthusiastic participation by the teens in the sexting.  As noted in the probation report, Michael never even tried to meet MP - there was never any suggestion that this would be more than a mutual sexting relationship.  Breakups were handled without a fight or recrimination.  There was no revenge porn.  Also importantly, Michael never downloaded or accessed internet child pornography at any point.  The photos that he had were squarely within the context of mutual relationships.

Michael cooperated with law enforcement fully and was released to go live with his mother in New Jersey.  When he was rearrested, he had *no new illegal images* of any kind on any device.  He had not downloaded any illegal images, sexted with or contacted any young women, or sought out any pornography.  Michael was scared straight.  He is not a danger and will not reoffend.

This case happened because of Michael's desire for love - emotional and physical.  Despite growing up in a house filled with abuse, fear, neglect, and trauma (described in the PSR at pages 11-12), Michael had the resilience to keep from falling into gangs, drugs, or alcohol.  He took care of his little brother and tried to protect him from the abuse around him.  Michael was the functioning member of the home who worked and paid for household expenses.  He wanted nothing more than to meet someone, fall in love, and start a stable family with her, in contrast to the home he grew up in.  Certainly, at 19, he was emotionally immature in many ways.  He had never had a girlfriend before.  He was a virgin.  He had seen how drugs,

and violence, and criminality, had destroyed his family. His attempts to protect himself, from bullying and bad influences, left him naïve about the world.

It is easy to understand why lonely young people find each other on the Internet and fall in love. Michael describes the situation so well - he was isolated, had too much responsibility for a young man, and was hoping to find love and acceptance in his first relationship. The Supervising Probation Officer spoke with Michael, and correctly determined that he "made connections with females via social media looking for acceptance and affection which he lacked the majority of his life from his family members and peers." (Doc. 50, PSR, para. 93, p. 17.)

Ten years in prison is more than enough punishment for Michael. It also amply sends the message that sexting with teens is a crime carrying a huge penalty. If we were in a world without mandatory minimums, it would make sense for Michael to receive less than 10 years for these crimes. However, the mandatory minimum applies, and the Court cannot go below. Accordingly, the Court's exercise of true sentencing discretion is constrained by the choice of charges in this case.

For Michael, it is too late for the law to catch up with reality. He will serve at least a decade in prison in the most productive way he can. He will take advantage of training and other opportunities in the BOP, as he has in the jail. During his incarceration so far, Michael has taken online classes at the Jail. He has also worked on his considerable artistic skills - one of the things that bound him and BN together.

There is absolutely no reason, founded in any factor under 18 U.S.C. 3553, to give Michael more than 10 years in custody in this case. This is a young man of enormous resiliency, who has much to give to society and to his family in the future. As noted in the PSR, Michael is a "youthful offender" with a "horrific childhood" filled with abuse. (Doc. 50, PSR pp. 17, 20.) The Supervising Probation Officer, who wrote the PSR, met with Michael at length and assessed his "immaturity, age, and lack of life experience." Id. She recommends both a downward departure on the basis of age, including the close age range with the victims, and a variance on the basis of Michael's history and characteristics. Based upon all those reasons, a 10-year

sentence is a significant punishment, incapacitates Michael into his early 30s, and sends a strong message to potential offenders about the seriousness with which this is taken in Federal court. Defense counsel urges the Court to impose a 10-year sentence on Michael.

DATED: February 18, 2020         HEATHER E. WILLIAMS
                                 Federal Defender


                                 /s/ Rachelle Barbour
                                 RACHELLE BARBOUR
                                 Assistant Federal Defender
                                 Attorney for Defendant
                                 MICHAEL ANAYA-OTERO